# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————————

№ 24-CV-08031 (RER) (RML)

————————————————

## JOANNE WILLIAMS

VERSUS

## NEW YORK CITY DEPARTMENT OF EDUCATION, MARION WILSON, AND ERICA MATTERA

————————————

**MEMORANDUM & ORDER**

————————————

**RAMÓN E. REYES, JR., District Judge:**

Plaintiff *pro se* Joanne Williams brings this action against the New York City Department of Education, a former Department of Education superintendent, and a school principal, alleging First Amendment retaliation and age discrimination. Defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

After carefully reviewing the record, and for the reasons set forth herein, the Court GRANTS defendants' motion to dismiss without prejudice.

## BACKGROUND[1]

Plaintiff *pro se* Joanne Williams ("Plaintiff" or "Williams"), a tenured public school teacher, and United Federation of Teachers ("UFT") union delegate and chapter leader,

———————————————

[1] The facts are taken from the complaint and assumed to be true for the purposes of this memorandum and order. *See Vaughn v. Phoenix House New York, Inc.*, 957 F.3d 141, 145 (2d Cir. 2020). The facts include

has worked for the New York City Department of Education ("DOE") since 1999 and has worked at P.S. 11 since 2000. (ECF No. 1 ("Compl.") ¶¶ 7, 11, 13, 15). On November 19, 2024, Williams filed a complaint against the DOE; Marion Wilson, former superintendent of District 31; and Erica Mattera, principal of P.S. 11, (collectively "Defendants"), alleging First Amendment retaliation under 42 U.S.C. § 1983 ("section 1983") and age discrimination under the New York State Human Rights Law, N.Y. Exec. Law §§ 296, *et seq.* ("NYSHRL") and New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107 *et seq.* ("NYCHRL"). (*Id.* ¶¶ 53–67).

Williams alleges that, after she raised "issues of public concern" with the P.S. 11 administration, Defendants retaliated against her by issuing disciplinary letters, subjecting her to Section 3020-a charges seeking termination of her employment, and reassigning her to P.S. 44. (*Id.* ¶¶ 53–57). Williams alleges that, on November 10, 2021, during a meeting with a union representative and other union members, she raised concerns about "ongoing harassment concerns by administration." (*Id.* ¶ 18). Two days later, on November 12, 2021, defendant Mattera issued a disciplinary letter against Plaintiff "alleging verbal abuse of a child." (*Id.* ¶ 19). The November 12, 2021, letter from Mattera to Williams stated the following. On October 21, 2021, Mattera, Williams, the assistant principal, and a union representative, met to discuss an allegation made by Williams' student's grandparent against Williams. (ECF No. 17-3 at 2–4). The grandparent alleged

---

information incorporated by reference in the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Namely, Williams' disciplinary letters and opinion and award, which she discusses in the complaint and Defendants attach to their motion to dismiss. (ECF Nos. 17-3–17-5).

that Williams screamed at the students daily and, that on September 27, 2021, Williams "screamed at the top of [her] lungs" to the grandparent's granddaughter at dismissal." (*Id.* at 2). The student was afraid of Williams and afraid to come to school. (*Id.*) Mattera concluded, based on the complaint, the complainant's statement and witness statements, and Williams' and her union representative's explanation, that Williams screamed at the student in class in response to her behavioral issues, in the presence of other students, and that it caused the student to fear coming to school. (*Id.* at 3). This violated Chancellor's Regulation A-421, which prohibits verbal abuse of students. (*Id.*) The letter included a warning: "This incident may lead to further disciplinary action, including charges that could lead to your termination." (*Id.*)

On November 18, 2021, during a consultation meeting with defendant Mattera and the union, Plaintiff "was outspoken" about a "lack of Social Emotional Learning/mental health support staff within the school," the "administration's failure to implement and adhere to appropriate COVID-19 safety protocols by having students eat their lunch in overcrowded and unsanitary classrooms," and "unsafe student dismissals by allowing outsiders to come onto the school's property to pull their kids from the line before the children could be accounted for." (Compl. ¶ 20). Less than a week later, defendant Mattera scheduled a disciplinary conference for December 1, 2021. (*Id.* ¶ 21). At the conference, defendant Mattera accused Plaintiff of improperly dismissing a child to her guardian. (*Id.*)

On January 27, 2022, during a consultation meeting with defendant Mattera, Williams raised a concern that defendant Mattera had refused to file a complaint or issue a disciplinary letter against a parent coordinator for endangering the safety of Williams'

3

students by dismissing students without Williams' knowledge and before Williams could identify who was taking the children. (*Id.* ¶ 23). The next day, defendant Mattera issued a disciplinary notice against Williams for "professional misconduct." (*Id.* ¶ 24).

On February 16, 2022, defendant Mattera issued a disciplinary letter against Plaintiff. (*Id.* ¶ 19; ECF No. 17-5 at 2–5). The February 16, 2022, letter from Mattera to Williams stated the following. On February 2, 2022, Mattera, Williams, the assistant principal, and a union representative, met to discuss "an allegation of serious professional misconduct" made by a parent coordinator against Williams. (ECF No. 17-5 at 2). It was alleged that, on December 16, 2021, Williams requested to be tested for COVID at the school by BioReference. (*Id.*) After the BioReference employees told Williams that staff could not be tested that day, Williams began to yell, stated that she was going to call her union, and then pulled down her mask, either spit or "simulated spitting," and yelled something to the effect of "I hope everyone gets COVID. And you can go tell Ms. Mattera!" (*Id.* at 2–3). Mattera concluded, based on the complaint, the complainant's statement and witness statements, and Williams' and her union representative's explanation, that Williams yelled in front of students, said she was going to call her union, pulled down her mask and spit, and yelled, "There, I hope everyone gets COVID. And you can go tell Ms. Mattera!" (*Id.* at 4). This constituted "serious professional misconduct" and violated Chancellor's Regulation A-421, a regulation regarding "the shared responsibility that we have to protect students and to guarantee their right to learn and to be safe." (*Id.*) The letter included a warning: "Please be advised that the above misconduct may lead to further disciplinary action, including charges that could lead to your termination." (*Id.* at 5).

4

On March 10, 2022, during a consultation meeting with defendant Mattera, Williams raised concerns about "reinstallation of windows at the school" and "what the $75,000 originally allocated for that project had been used for." (Compl. ¶¶ 25–26). Following the meeting, Williams requested that defendant Mattera send her the school's budget for circulation, but Mattera claimed the school budgeting software was "down." (*Id.* ¶¶ 27–28).

On March 18, 2022, Williams was escorted out of the school building and placed on administrative leave pending Section 3020-a disciplinary charges. (*Id.* ¶ 29). Williams was served with the charges on March 21, 2022, which alleged that Williams "engaged in misconduct, verbal abuse, conduct unbecoming her profession, and conduct that may constitute a crime under *Education Law* § 3020-a." (*Id.* ¶ 30; ECF No. 17-4 at 2). The DOE sought Williams' termination. (ECF No. 17-4 at 2). A hearing officer conducted a pre-hearing conference on May 24, 2022. (*Id.* at 3).

In May and June 2022, Plaintiff raised concerns that defendant Mattera and the administration were failing "to properly record and underreport Online Occurrence Reports (OORs) concerning school safety issues." (Compl. ¶ 31). Plaintiff alleges that she raised concerns about the school's "failure to provide proposed job postings for positions within the school," but does not specify when or to whom she raised these concerns. (*Id.* ¶ 54).

Williams' hearing regarding the disciplinary charges against her was held over the course of eleven days between February and June 2023. (ECF No. 17-4 at 3). On August 16, 2023, the hearing officer found Williams not guilty of allegations about her yelling at and belittling students, and guilty of allegations surrounding the December 2021 spitting

5

incident—that, by spitting on students, Williams, among other things, potentially spread COVID and "recklessly disregarded the health, safety, and welfare of a student." (*Id.* at 16–19). Williams' penalty was a $15,000 fine. (*Id.* at 20–21). Williams was not fired. (Compl. ¶ 34). Beginning in October 2023, defendant Mattera did not allow Plaintiff to attend meetings "despite Plaintiff remaining in her position as the UFT chapter leader at the school." (*Id.* ¶ 38). On or about August 14, 2024, Wiliams was assigned to P.S. 44 effective September 3, 2024. (*Id.* ¶ 39).

Williams further alleges that Defendants subjected her to age discrimination by treating her less well than similarly situated, younger colleagues at P.S. 11. (*Id.* ¶¶ 58–67). She alleges that a substitute teacher in her 20's was hired to cover Plaintiff's class after Plaintiff's reassignment out of P.S. 11, and that Mattera hired a teacher in her 30's to replace Williams at P.S. 11 from March 24, 2022, until the end of the school year. (*Id.* ¶¶ 48–49, 61).

Defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted. (ECF No. 17-1 ("Defs.' Mem.")). Plaintiff opposes. (ECF No. 19 ("Pl.'s Opp'n")). Defendants reply. (ECF No. 20 ("Defs.' Reply")).

## **LEGAL STANDARD**

A defendant may move to dismiss a civil action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

6

is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Bare conclusory statements will not suffice. *Id.* at 681. When courts consider whether a complaint "states a plausible claim for relief," they must accept all factual allegations stated in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.* at 679; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curium).

"It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). However, it is within a district court's discretion "to determine based on the totality of the relevant circumstances when the when the ordinary approach is not appropriate and what degree of solicitude, if any, should be afforded." *Id.* at 102–103. Here, Williams included a footnote in her complaint stating: "I received assistance from an attorney who helped me draft this Complaint," (Compl. at 1 n.1) and a footnote in her opposition stating: "Plaintiff received legal assistance with this brief," (Pl.'s Opp'n at 7 n.1). Nevertheless, this Court will afford her special solicitude because it is not clear to what extent Williams was assisted by an attorney in drafting her complaint and opposition.

**DISCUSSION**

I.    Plaintiff Fails to State a Section 1983
      First Amendment Retaliation Claim[2]

To state a section 1983 claim for First Amendment retaliation "a plaintiff must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82 (2d Cir. 2022) (quoting *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003)).

Defendants put forth many reasons to dismiss Plaintiff's complaint but, as a practical matter, Williams was not engaging in First Amendment protected speech. Therefore, she has no claim.

"In assessing the first prong of the retaliation test—whether a public employee's speech is protected—we must consider 'two separate subquestions': (1) whether the employee 'spoke as a citizen rather than solely as an employee,' and (2) whether he spoke on 'a matter of public concern.'" *Id.* at 82–83 (quoting *Matthews v. City of New*

---

[2] Plaintiff filed her complaint on November 19, 2024. (*See generally* Compl.). Plaintiff's claims related to alleged adverse actions that occurred prior to November 19, 2021, are untimely. "The statute of limitations for a § 1983 claim is three years." *Becker v. Nassau Boces Sch. Dist.*, No. 21-CV-2855 (ST), 2022 WL 4586244, at *7 (E.D.N.Y. Sept. 29, 2022) (citing *Connolly v. McCall*, 254 F.3d 36, 40 (2d Cir. 2001)). "Claims that are time-barred by this three-year statute of limitations must be dismissed." *Id.* "Under the federal standard, a § 1983 claim accrues when a plaintiff knows or has reason to know of the injury giving rise to the claim." *Id.* Plaintiff contends that the continuing violations doctrine saves her earlier claims. (Pl.'s Opp'n at 16–19). The Court disagrees. The issuance of disciplinary letters, Section 3020-a charges, and reassignment to another school are discrete acts that do not trigger the continuing violation doctrine for Plaintiff's First Amendment retaliation claim. *See Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019) ("To qualify as continuing, the claimed actions must not be discrete acts, but repeated conduct that occurs over a series of days or perhaps years."); *see also Baez v. New York City Dep't of Educ.*, No. 24-CV-06597 (HG), 2026 WL 44883, at *4 (E.D.N.Y. Jan. 7, 2026). Therefore, the Court will not analyze the disciplinary letter that Williams received on November 12, 2021.

8

*York*, 779 F.3d 167, 172 (2d Cir. 2015)). "If either question is answered in the negative, our inquiry may end there." *Id.* at 83. "If both questions are answered in the affirmative, we may proceed to consider whether the employer had an adequate justification for treating the employee differently from any other member of the general public based on the government's needs as an employer." *Id.* (citation omitted).

For the reasons discussed below, none of Plaintiff's alleged speech was protected. Therefore, her First Amendment retaliation claim must be dismissed.

A.   Plaintiff's Speech Was Not Made as a Private Citizen

"For a public employee to demonstrate that she spoke as a private citizen, she must establish that her speech fell 'outside of [her] official responsibilities.'" *Baez v. New York City Dep't of Educ.*, No. 24-CV-06597 (HG), 2026 WL 44883, at *6 (E.D.N.Y. Jan. 7, 2026) (quoting *Shara*, 46 F.4th at 83). "[S]peech may be pursuant to an employee's official duties when it is part-and-parcel of the employee's concerns about [her] ability to properly execute [her] duties." *Id.* "Whether a public employee's speech was 'pursuant to' her job duties is a 'practical' inquiry, and a court should not 'constru[e] a government employee's official duties too narrowly' by relying solely on a formal job description." *Id.* (quoting *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 202 (2d Cir. 2010)).

Defendants contend that Plaintiff's speech was not protected because all the alleged instances of protected speech were made either in the scope of her duties as a union representative or as a personal employee grievance as a teacher, not as a private citizen. (Defs.' Mem. at 19–22). Plaintiff argues that her speech was protected because she was speaking in her role as a union leader and citizen, which was distinct from her position as a classroom teacher. (Pl.'s Opp. at 10). The Court agrees with Defendants.

9

"*[I]nternal* complaints by teachers about student/teacher issues based upon information learned through their jobs—whether it be safety issues, staffing/service issues, violation of school policy, or misuse of school property/information—constitute speech as a public employee, rather than a private citizen, and are not protected by the First Amendment []." *Kelly v. Huntington Union Free Sch. Dist.*, No. 09-CV-2101 (JFB) (ETB), 2012 WL 1077677, at *15 (E.D.N.Y. Mar. 30, 2012).

Williams alleges that she "was outspoken" about a "lack of Social Emotional Learning/mental health support staff within the school," the "administration's failure to implement and adhere to appropriate COVID-19 safety protocols by having students eat their lunch in overcrowded and unsanitary classrooms," and "unsafe student dismissals by allowing outsiders to come onto the school's property to pull their kids from the line before the children could be accounted for." (Compl. ¶ 20). Williams further alleges that she raised concerns when defendant Mattera refused to file a complaint or issue a disciplinary letter against a parent coordinator for endangering the safety of Williams' students by dismissing students without Williams' knowledge and before Williams could identify who was taking the children. (*Id.* ¶ 23). And Williams alleges she raised concerns that defendant Mattera and the administration were failing "to properly record and underreport Online Occurrence Reports (OORs) concerning school safety issues." (*Id.* ¶ 31).

This speech pertains to school safety, which is a "primary employment responsibility of teaching." *Shara,* 46 F.4th at 84 (quoting *Weintraub*, 593 F.3d 196 at 203). As to her alleged speech about COVID-19 safety protocols, this does not constitute citizen speech because it was made in the scope of Williams' duties as a teacher and

was not conveyed to the public. *See id.* at 83 ("To determine whether a public employee speaks pursuant to his official duties, courts examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two, along with other contextual factors such as whether the plaintiff's speech was also conveyed to the public.") (citation omitted). Therefore, Williams' speech was made in her position as a teacher, not as a private citizen.

Williams alleges that she raised concerns about "reinstallation of windows at the school" and "what the $75,000 originally allocated for that project had been used for." (Compl. ¶¶ 25–26). She alleges that, following a meeting, she requested that defendant Mattera send her the school's budget for circulation, but Mattera claimed the school budgeting software was "down." (*Id.* ¶¶ 27–28). Further, Williams claims that she raised concerns about the school's "failure to provide proposed job postings for positions within the school," without specifying when or to whom she raised these concerns. (*Id*. ¶ 54).

This speech pertains to potential mismanagement of the school which is "part-and-parcel of [her] concerns about [her] ability to properly execute [her] duties" as a union representative and classroom teacher. *Weintraub*, 593 F.3d 196 at 203. Therefore, her speech was made in her position as a teacher and union representative, not as a private citizen.

Accordingly, because Williams has failed to plausibly allege that her speech was made as a private citizen, she has failed to plausibly allege that her speech was protected.

11

B. Plaintiff's Speech was not on Matters of Public Concern

Because Plaintiff's speech was not made as a private citizen, the Court's inquiry may end there. However, to the extent that her speech was made as a private citizen, which it was not, her speech was also not made as to matters of public concern.

"For speech to touch upon a matter of public concern, it must relate to 'political, social, or other concern to the community and be of general interest or of legitimate news interest.'" *Baez*, 2026 WL 44883, at *5 (quoting *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 95 (2d Cir. 2020)). "For public employees, speech that principally focuses on an issue that is personal in nature and generally related to the speaker's own situation or that is calculated to redress personal grievances—even if touching on a matter of general importance—does not qualify for First Amendment protection." *Id.* "Although union-related speech may address matters of public concern, the Second Circuit has 'rejected the notion that all activities undertaken through a union necessarily become matters of public concern merely by virtue of their collateral connection to the union.'" *Id.* at *6 (quoting *Shara*, 46 F.4th at 85).

As discussed above, Williams' alleged speech pertains to school safety and potential mismanagement of the school. These topics do not carry First Amendment protection. As to her alleged speech about COVID-19 safety protocols in particular, while the pandemic itself is arguably a matter of public concern, Williams' alleged speech was nevertheless personal in nature because it was made only in an internal meeting with the school's administration and union, and was about issues that implicate classroom management. *See Shara*, 46 F.4th at 84 ("Whether speech is on a matter of public concern is a question of law that courts decide by examining the content, form, and

12

context of a given statement, as revealed by the whole record.") (citation omitted). Therefore, Williams has failed to sufficiently plead facts to support the first prong of a claim for First Amendment retaliation, and her claim must be dismissed.

C.    Plaintiff Has Not Pleaded *Monell* Liability

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents" unless such injury is the result of the "execution of a government's policy or custom." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Defendants contend that Plaintiff failed to allege any DOE policy, practice, or custom that caused the alleged violations of her constitutional rights. (Defs.' Mem. at 18–19). Defendants further contend that Plaintiff claims defendant Mattera was the individual who allegedly violated her rights, and that defendant Mattera is not a final policymaker for the DOE; therefore, her *Monell* claim fails. (*Id.* at 19).

Without a viable constitutional claim, Williams cannot allege *Monell* claim. *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

Therefore, because Williams has failed to plausibly allege a First Amendment retaliation claim, Williams' *Monell* claim must be dismissed.

II.    The Court Declines to Exercise Supplemental Jurisdiction
       Over Plaintiff's NYSHRL and NYCHRL Claims

"Although the decision whether to decline to exercise supplemental jurisdiction is 'purely discretionary' . . . we have repeatedly said that 'if a plaintiff's federal claims are dismissed before trial, 'the state law claims should be dismissed as well.'" *Oneida Indian Nation of New York v. Madison Cnty.*, 665 F.3d 408, 437 (2d Cir. 2011) (citation omitted).

13

Without a live federal claim, this Court declines to exercise supplemental jurisdiction over Williams' NYSHRL and NYCHRL age discrimination claims. Therefore, Williams' age discrimination claims are dismissed.

III.     Leave to Amend is Denied

Plaintiff requests leave to file an amended complaint "to address any deficiencies identified by the Court." (Pl.'s Opp. at 8).

Although leave to amend should be freely given it may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice. *E.g.*, *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90–91 (2d Cir. 2023). Here, amendment would be futile. Williams cannot cure the defects in her pleadings because the speech at issue was not made as a private citizen and was not about matters of public concern. *See Baez*, 2026 WL 44883, at *9 ("Plaintiff cannot add facts to revive First Amendment protection that does not exist."); *see also Jones-Bey v. Stanislov*, No. 23 Civ. 5599, 2024 WL 3520636, at *6 (S.D.N.Y. July 23, 2024) ("Because Plaintiff fails to allege a constitutional violation and provides no basis to conclude that any amendment could remedy her pleadings, the Court has determined that granting Plaintiff leave to amend would be futile."). Accordingly, leave to amend is denied.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss without prejudice. The Clerk of Court is respectfully directed to close the case and mail a copy of this Order to Williams at her address of record and note the mailing on the docket.

SO ORDERED.

/s/ Ramón E. Reyes, Jr.

RAMÓN E. REYES, JR.
United States District Judge

Dated: June 17, 2026
        Brooklyn, New York